# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SCION 2040 MANAGING MEMBER LLC,

        Plaintiff,

      v.                              Case No. 10-C-825

EBREF HODLING COMPANY, LLC and
ASB ALLEGIANCE REAL ESTATE FUND,

        Defendants.

## ORDER DENYING MOTION TO STAY

Currently pending before this court is the joint motion of defendants ASB Allegiance Real Estate Fund ("Allegiance") and EBREF Holding Company LLC ("EBREF") to stay the proceedings. (Docket No. 6.) Although the factual history of this litigation is extensive, it is not necessary to delve into a complete discussion about the intricate relationships between all involved entities or the meanings of the terms "preferred return" or "promote" as used within the LLC agreement's "waterfall" provision, in order to resolve the defendants' current motion. Instead, the court shall recount here, in summary fashion, only the facts essential to the present motion.

ASB Capital Management, LLC ("ASB") and The Scion Group, LLC ("Scion") joined together to develop student housing near universities across the country. (Docket No. 7 at 3.) Allegiance is managed by ASB, (Docket No. 9-1 at ¶2), and EBREF is wholly owned by ASB (Docket No. 9-1 at ¶3). Allegiance's trustee is Chevy Chase Trust Company, which was formerly known as the Chevy Chase Trust Company Collective Investment Trust Employee Benefit Real Estate Fund. (Docket No. 9-1 at ¶2.)

For each property development, a separate Delaware limited liability company ("LLC") was created with one ASB member, which provided nearly all the capital, and one Scion member, which provided the remaining capital and was tasked with management. (Docket No. 9-1 at ¶8.) In the present case, the Scion member is the plaintiff, Scion 2040 Managing Member, LLC ("2040"), an Illinois LLC, (Docket No. 1 at ¶1). 2040 joined with Chevy Chase Trust Company Collective Investment Trust Employee Benefit Real Estate Fund to form 2040 Lofts, LLC, a Delaware LLC, (Docket No. 1 at 15), to develop housing near the Marquette University campus in Milwaukee, Wisconsin.

The LLC agreement forming 2040 Lofts, LLC, lies at the heart of this litigation. The agreement permits 2040 to demand that it be bought out by the other LLC member and provides a mechanism for calculating 2040's buyout. (Docket No. 1 at 49-50.) 2040 exercised its right and calculated the amount due in accordance with the LLC agreement. (Docket No. 1 at ¶34.) Defendants refused to pay this amount, instead contending that the buyout provisions in the LLC agreement do not reflect the parties' actual agreement. (Docket No. 1 at ¶37.) 2040 filed suit in this district based upon diversity seeking relief for defendants' alleged breach, or anticipatory breach of the LLC agreement. (Docket No. 1.) Other Scion entities have filed suit in the Middle District of Florida and the Northern District of Illinois seeking similar relief of the enforcement of LLC agreements they entered into with ASB entities. (Docket No. 16 at 7 (citing M.D. Fla. Case No. 10-C-2136; N.D. Ill. Case No. 10-C-6118).)

A day after 2040 filed the present action, defendants filed suit in the Delaware Court of Chancery seeking reformation of the 2040 Lofts, LLC agreement and the LLC agreements related to the two projects at issue in the cases pending in the Middle District of Florida and the Northern District of Illinois. (Docket No. 16 at 7; Docket No 9-1.) The three Scion entities that are plaintiffs

2

in the three federal court actions, including 2040, are named as defendants in the Delaware action; all relevant ASB entities are named as plaintiffs in that action. (Docket No. 9-1.)

The defendants argue that this court should stay the current proceedings until the Delaware proceedings conclude. (Docket No. 7.) The plaintiff has filed its opposing response to this motion (Docket No. 16.) and the defendants have replied. (Docket No. 18.) The pleadings on the defendants' motion to stay are closed and the matter is ready for resolution. All parties have previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 11, 14.)

The defendants' motion raises the doctrine of abstention. At the outset, it must be noted that there is no jurisdictional bar against having the same matter simultaneously pending in both a state and federal court. Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). Although federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," under the doctrine of abstention, in extraordinary circumstances, a federal court may decline to exercise or postpone the exercise of its jurisdiction if doing so would clearly serve an important interest. Id. at 813, 817.

The first step in a court's abstention analysis is determining whether the two proceedings are, in fact, parallel. Finova Capital Corp. v. Ryan Helicopters U.S.A, Inc., 180 F.3d 896, 898 (7th Cir. 1999) (citing Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc., 962 F.2d 698 (7th Cir. 1992)). "Suits are parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." Id. (quoting Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir. 1990)). For the purposes of this motion, 2040 does not dispute that this action is parallel with the Delaware action. (Docket No. 16 at 8-9.)

Next, the court must "balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." Finova, 180 F.3d at 898. Courts have articulated a long non-exhaustive list of factors to consider, including:

3

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

TruServ Corp. v. Flegles, Inc., 419 F.3d 584, 592 (7th Cir. 2005) (quoting Caminiti & Iatarola, 962 F.2d at 701). The weight to be afforded each of these factors will vary depending upon the circumstances of the case. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). None of these factors is determinative but rather it is the obligation of the court to carefully balance all of these factors. Id.

The first factor regarding jurisdiction over property is not relevant in this case; this is a contract dispute and not an action in rem. Many of the factors are clearly neutral and thus merit little discussion. For example, although the Delaware action was technically filed after this action, the difference is only one day, and thus practically speaking, both actions were filed simultaneously. But "[t]his factor, as with the other Colorado River factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand. Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Id. at 21. The court lacks any information specific information about the progress of the Delaware action other than the defendants' statement "both actions are nascent, with no substantive progress in either one." (Docket No. 7-1 at 5.) Therefore, both the fourth and seventh factors are neutral.

As for the sixth factor, the plaintiff does not disagree that Delaware Chancery Court is an adequate forum. (Docket No. 16 at 11.) Finally, there is no dispute that both courts have jurisdiction, and thus the eighth factor is "of little significance." Miller Brewing Co. v. Ace U.S. Holdings, Inc., 391 F. Supp. 2d 735, 743 (E.D. Wis. 2005).

Factors weighing against abstention include the fact that the parties agree that the Delaware action is not removable to federal court. Therefore, if the court were to grant the defendants' motion to stay, because the Delaware court's decision on identical issues would likely be afforded preclusive effect, the practical result may well be to deny 2040 its day in federal court. See Schneider Nat'l Carriers, 903 F.2d at 1157 (citing Moses H. Cone Memorial Hosp., 460 U.S. at 9-10). 2040 has chosen to litigate this case in federal court and that choice cannot be casually brushed aside. Through diversity jurisdiction, Congress has vested federal courts with jurisdiction over disputes that might otherwise be brought in state courts, and "until Congress decides to alter or eliminate the diversity jurisdiction [courts] are not free to treat the diversity litigant as a second-class litigant." Evans Transp. Co. v. Scullin Steel Co., 693 F.2d 715, 717 (7th Cir. 1982).

Also weighing against abstention, but to a much lesser extent, is the convenience of this forum. The connection this district has to this case appears to be primarily the fact that this is the location of the relevant real estate development. Scion is based in Chicago, Illinois, (Docket No. 1 at ¶1), and thus it appears that it would be more convenient for 2040 to litigate this case in an adjoining district rather than a state court over 700 miles away. The defendants, citizens of Maryland, (Docket No. 1 at ¶6), have retained attorneys from Boston in addition to local counsel. Conveniently, two airlines offer direct service from Boston to Milwaukee. In this regard, the court notes that the defendants' Boston law firm also has offices in Chicago and Tampa, and attorneys from those offices are representing the defendants in the other federal forums. Thus, the factor of convenience is negligible.

"The tenth factor, the vexatious or contrived nature of the federal claim, is inapplicable in the present case because there is no federal claim." Miller Brewing, 391 F. Supp. 2d at 743. This case comes to the court based upon diversity. Nonetheless, the defendants also argue that the tenth factor weighs in favor of abstention because 2040's suit, which is one of three suits, was vexatious

5

and reactive. (Docket No. 7-1 at 5, 10.) The court disagrees. The fact that 2040 might have filed the present case in response to a letter from ASB does not make this case somehow inappropriately reactive. It is common for parties to attempt to work out a dispute before resorting to litigation. But at some point, one party concludes that litigation is necessary and so proceeds to file a court action. There is nothing untoward about this.

Further, the court finds nothing vexatious about the fact that Scion entities filed three separate lawsuits. Scion chose to litigate its dispute in a federal forum, and there is no indication that a single federal district would have jurisdiction over all three cases and thus, filing three separate cases was the only way Scion could avail itself of the federal forum. As such, the court finds this factor to be neutral in the calculus.

Weighing slightly in favor of abstention is the fact that Delaware law governs the parties' contract. (Docket No. 1 at 56.) It should be readily apparent that a state court (or a federal court within that state) is better equipped to apply that state's law than a federal court halfway across the country. See Evans Transp., 693 F.2d at 720. However, there is no indication that this dispute involves novel or complex questions of state law, and thus, this factor, at best, can only be given nominal weight in favor of abstention. See Schneider Nat'l Carriers, 903 F.2d at 1157.

Factor three, the desirability of avoiding piecemeal litigation, weights most heavily in favor of abstention. Although courts have noted that "[t]he principal purpose of a stay under Colorado River is judicial economy," id., courts have also said that it is not enough that having two active lawsuits in two different courts will likely result in judicial diseconomy, Evans Transp., 693 F.2d at 717. Some duplication of judicial effort will be inherent any time a court is faced with an abstention question such as this. Id. at 718. Something that is inherent could hardly constitute the exceptional circumstances the Supreme Court has repeatedly said are required for abstention. But the desire to avoid piecemeal litigation does tip the scales to the side of abstention when the state court action

would dispose of all of the claims in the federal action rather than just some part of the federal action. Caminiti & Iatarola, 962 F.2d at 701-02 (quoting Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir. 1985)).

On the other hand, the Delaware action would not necessarily dispose 2040's present claim. The claim in the Delaware action is one for reformation. (Docket No. 9-1 at 24.) This court is presented with no information that 2040 has counterclaimed with its breach of contract claim in that action or that such a counterclaim would be compulsory.

However, if this court declined to grant a stay in this matter, almost surely, as is evidenced by the proceedings in the Northern District of Illinois, ASB and EBREF will file a counterclaim against 2040 seeking reformation of the agreement (which is essentially a copy of its Delaware action). (See N.D. Ill. Case No. 10-C-6118, Docket No. 31.) If this pattern is followed in the Florida action, the result will be that four courts will simultaneously be considering the question of reformation of essentially identical agreements. The consequence will be a race to final resolution with the decision of the first court being accorded either preclusive or persuasive effect by the other courts.

Having four courts simultaneously considering the same question of reformation only to have the first court across the finish line possibly negate the work of all other courts is a grossly inefficient use of judicial resources. But phrasing the issue in this manner is improper. The issue before this court is not whether the three federal actions should be stayed in favor of the Delaware action. Only one case is pending before this court and that is the only case this court has the authority to stay; whether to stay the other federal cases or the state case are decisions committed to the sound discretion of those courts.

Similarly, it would be grossly inefficient if the parties were to insist upon unnecessarily duplicative discovery, for example by insisting that each principal be deposed once for each action

7

rather than conducting a single comprehensive deposition. But the parties can avoid this simply by agreeing that where appropriate, discovery in one case may be utilized in all others.

Even if all three federal courts were to deny the requests for a stay, the result would not necessarily be three federal cases proceeding simultaneously. Federal courts have the authority to stay proceedings until related proceedings in another federal court conclude. Because the issue is not a matter of a federal court declining to exercise its jurisdiction in favor of a state court, the standard is different. "[T]hough no precise rule has evolved, the general principle is to avoid duplicative litigation." Colo. River, 424 U.S. at 817 (citing Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952); Steelman v. All Continent Corp., 301 U.S. 278 (1937); Landis v. North American Co., 299 U.S. 248, 254 (1936)). Parenthetically, once the state court recognizes that a federal court has denied a motion to stay, it may well grant a motion to stay its proceedings. See Evans Transp., 693 F.2d at 720; Miller Brewing, 391 F. Supp. 2d at 742.

Having only one court at a time consider a case might be efficient and logical but this is insufficient to overcome the presumption against abstention. It is important to remember that the court's analysis is not a matter of simply balancing the relevant factors and determining which way the scales tip. Since abstention should be employed only in extraordinary circumstances, the scales are initially heavily weighted against abstention. So if the court's review of the enumerated factors comes out with every factor being neutral or even weakly in favor of abstention, in the end, the scales remain tipped against abstention. It is only if the factors in favor of abstention are so strong to overcome this presumption against abstention that the court will abstain in favor of a state forum.

There are certainly good reasons in favor of abstention in this case, most notably the strong interest in avoiding a needless expenditure of scarce judicial resources on duplicative litigation. But in the view of this court, considering the totality of the circumstances, those factors in favor of abstention do not overcome the heavy weight on the other side of the balance. With the dual federal

and state judicial systems, occasionally circumstances of duplicative litigation may arise, "but that may be the unavoidable price of giving diversity litigants their rights under 28 U.S.C. § 1332." Evans Transp., 693 F.2d at 720. Although inefficient, in light of this court's virtually unflagging obligation to exercise the jurisdiction that has been conferred upon it, this "is not enough to tip a balance heavily weighted in favor of the exercise of federal jurisdiction." Schneider Nat'l Carriers, 903 F.2d at 1157-58.

**IT IS THEREFORE ORDERED** that the defendants' motion to stay, (Docket No. 6), is **denied**. In accordance with this court's prior order, (Docket No. 13), the defendants shall answer the complaint no later than **December 6, 2010**.

**IT IS FURTHER ORDERED** that the court shall conduct a telephone scheduling conference on **December 13, 2010 at 8:30 A.M.** The court shall initiate the call. One representative counsel for each party shall contact my chambers at 414-297-3963 to notify the court as to participants and direct dial phone numbers no later than December 10 at 10:00 AM CST.

Dated at Milwaukee, Wisconsin this 29th day of November, 2010.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge