UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SCION 2040 MANAGING MEMBER LLC,

    Plaintiff,

  v.           Case No. 10-C-825

EBREF HODLING COMPANY, LLC and
ASB ALLEGIANCE REAL ESTATE FUND,

    Defendants.

---

# ORDER DENYING MOTION TO DISMISS COUNTERCLAIM

---

## I. FACTS AND PROCEDURAL HISTORY

Currently pending before this court is the motion of plaintiff Scion 2040 Managing Member LLC ("2040") to dismiss the counterclaim of defendants ASB Allegiance Real Estate Fund ("Allegiance") and EBREF Holding Company LLC ("EBREF") (Docket No. 23.) This court previously denied the defendants' joint motion to stay the present proceedings pending the resolution of related proceedings currently pending in the Delaware Court of Chancery. (Docket No. 19.)

Although the factual history of this litigation is extensive, the court shall focus here upon only the facts necessary to resolve the present motion. ASB Capital Management, LLC ("ASB") and The Scion Group, LLC ("Scion") joined together to develop student housing near universities across the country. (Docket No. 7 at 3.) Allegiance is managed by ASB, (Docket No. 9-1 at ¶2), and EBREF is wholly owned by ASB (Docket No. 9-1 at ¶3). Allegiance's trustee is Chevy Chase Trust

Company, which was formerly known as the Chevy Chase Trust Company Collective Investment Trust Employee Benefit Real Estate Fund. (Docket No. 9-1 at ¶2.)

For each property development, a separate Delaware limited liability company ("LLC") was created with one ASB member, which provided nearly all the capital, and one Scion member, which provided the remaining capital and was tasked with management. (Docket No. 9-1 at ¶8.) In the present case, the Scion member is the plaintiff, Scion 2040 Managing Member, LLC ("2040"), an Illinois LLC, (Docket No. 1 at ¶1). 2040 joined with Chevy Chase Trust Company Collective Investment Trust Employee Benefit Real Estate Fund to form 2040 Lofts, LLC, a Delaware LLC, (Docket No. 1 at 15), to develop housing near the Marquette University campus in Milwaukee, Wisconsin.

The LLC agreement forming 2040 Lofts, LLC, lies at the heart of this litigation. The agreement permits 2040 to demand that it be bought out by the other LLC member and provides a mechanism for calculating the amount of 2040's buyout. (Docket No. 1 at 49-50.) 2040 exercised its right and calculated the amount due in accordance with the LLC agreement. (Docket No. 1 at ¶34.) Defendants refused to pay this amount, instead contending that the buyout provisions in the LLC agreement do not reflect the parties' actual agreement. (Docket No. 1 at ¶37.) 2040 filed suit in this district based upon diversity seeking relief for defendants' alleged breach, or anticipatory breach, of the LLC agreement. (Docket No. 1.) Other Scion entities have filed suit in the Middle District of Florida and the Northern District of Illinois seeking similar relief of the enforcement of LLC agreements they entered into with ASB entities. (Docket No. 16 at 7 (citing M.D. Fla. Case No. 10-C-2136; N.D. Ill. Case No. 10-C-6118).)

A day after 2040 filed the present action, defendants filed suit in the Delaware Court of Chancery seeking reformation of the 2040 Lofts, LLC agreement and the LLC agreements related to the two projects at issue in the cases pending in the Middle District of Florida and the Northern

District of Illinois. (Docket No. 16 at 7; Docket No 9-1.) The three Scion entities that are plaintiffs in the three federal court actions, including 2040, are named as defendants in the Delaware action; all relevant ASB entities are named as plaintiffs in that action. (Docket No. 9-1.)

**II. ANALYSIS**

A counterclaim, like a civil complaint generally need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The Rule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." Brooks v. Ross, 578 F.3d 574, 2009 U.S. App. LEXIS 18711 (7th Cir. 2009) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002)). At a minimum, a complaint or counterclaim

> must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009).

However, in recognition of the fact that a defendant requires more detailed notice of the nature of a party's claim in order to properly prepare a defense against certain varieties of claims, Fed. R. Civ. P. 9(b) requires that when a party alleges a mistake, the "party must state with particularity the circumstances constituting [the] mistake." Fed. R. Civ. P. 9(b); Tomera v. Galt, 511 F.2d 504, 508 (7th Cir. 1975). Thus, because the present defendants' counterclaim rests upon an alleged mistake, the court must consider Rule 9(b) in conjunction with Rule 8(a) to determine whether, with respect to the alleged mistake, the defendants have satisfied the requirement of Rule 9(b) to demonstrate "slightly more" than what would be required under Rule 8(a). See Tomera, 511 F.2d at 508.

3

The defendants' counterclaim seeks equitable reformation of the 2040 Lofts LLC agreement. The plaintiff contends that dismissal is appropriate because even if the defendants' allegations are true, these allegations are insufficient to establish a claim for reformation. (Docket No. 24 at 6.)

The parties' LLC agreement contains a choice of law provision stating that it is governed by Delaware law. (Docket No. 1 at 56.) Therefore, the parties agree that it is Delaware law that governs the defendants' counterclaim for reformation. See, e.g., Auto-Owners Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543, 547 (7th Cir. 2009).

Parties, especially experienced and sophisticated parties, are generally held strictly to the terms of an unambiguous contract; thus, failing to read or understand a contact is usually no defense against its terms. However, the equitable remedy of reformation, which "by definition involves a party who has not read, or thought about, the provisions in a contract carefully enough," Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P., 794 A.2d 1141, 1154 (Del. 2002), is a narrow exception to this general principle.

> There are two doctrines that allow reformation. The first is the doctrine of mutual mistake. In such a case, the plaintiff must show that both parties were mistaken as to a material portion of the written agreement. The second is the doctrine of unilateral mistake. The party asserting this doctrine must show that it was mistaken and that the other party knew of the mistake but remained silent. Regardless of which doctrine is used, the plaintiff must show by clear and convincing evidence that the parties came to a specific prior understanding that differed materially from the written agreement.

Id. at 1151-52 (footnotes omitted). The clear and convincing evidentiary standard is necessary

> The clear and convincing evidentiary standard is an intermediate evidentiary standard, higher than mere preponderance, but lower than proof beyond a reasonable doubt. The Delaware Court on the Judiciary has described this standard as requiring evidence which produces in the mind of the trier of fact an abiding conviction that the truth of the factual contentions are highly probable. Authorities also say that, to meet this burden, the evidence must produce in the mind of the fact-finder a firm belief or conviction that the allegations in question are true. The Superior Court's civil jury instructions on clear and convincing evidence require the proof to be highly probable, reasonably certain, and free from serious doubt.

Id. at 1151 (footnotes and internal quotation marks and brackets omitted).

The defendants present alternative grounds for relief in their counterclaim, alleging that either a mutual or unilateral mistake occurred here. (Docket No. 20 at 7.) Lying at the heart of this dispute are the terms of the "sales proceeds waterfall," which provides how each party will be compensated in the event that 2040 exercised its right to be bought out by the defendants. (Docket No. 20 at 9.) It is undisputed that after the first two ventures, the parties began negotiating terms for subsequent ventures. As a result of these negotiations, numerous changes to the "sales proceeds waterfall" were made. (Compare Docket No. 20 at 15-16 with Docket No 20-1 at 10.) The defendants acknowledge that certain of these changes were intended.

In simplistic terms, what the defendants allege happened was that in the process of negotiating certain revisions to the agreement after two ventures using essentially the same agreement, the order of distributions was mistakenly switched. (Docket No. 20 at 9.) The earlier agreements provided that in the event of a sale, each member of the LLC would first receive a return of the capital it invested in the venture before moving on to the next step of the waterfall. (Docket No. 20 at 9.) At this next step, the Scion member would then receive a "promote percentage." (Docket No. 20 at 9.) The present agreement, and the other two similar agreements that are the subject of litigation in other courts, reversed this order so that the Scion member, in this case 2040, would receive the "promote percentage" before each member received a return of its capital. (Docket No. 20 at 9.) The defendants contend that it was the intent of the parties to maintain the payment order set forth in the earlier agreements, and thus seek reformation of the agreement to appropriately reflect this understanding. (Docket No. 20-1 at 15.)

The plaintiff contends that the defendants' counterclaim fails to state a claim for relief and the defendants, in effect, "pled themselves out of court" by admitting that the parties made certain negotiated changes to the relevant provision of the agreement and acknowledging that the parties

5

never discussed the order of the promote. (Docket No. 28 at 7.) In the plaintiff's view, the contentions are mutually exclusive. Because reformation requires proof of a prior agreement, the defendants' admission that the order of the promote was never discussed precludes a finding the parties had an agreement contrary to what the final written agreement reflects.

There plainly were prior agreements, namely the LLC agreements for the first two ventures. "[D]ocumentary evidence of a prior agreement is particularly persuasive in" sustaining a party's burden of clear and convincing evidence, Cerberus Int'l, 794 A.2d at 1153, and thus it is hardly surprising that the defendants discuss these prior agreements at length. However, the plaintiff contends that these agreements are irrelevant because they relate to wholly distinct transactions and moreover did not involve the same legal parties, but instead merely affiliated entities. The defendants respond that on the defendants' side, the entity was the same and although a different Scion entity was technically the party to each transaction, in each instance the Scion entity was created solely for the venture and was wholly owned by Scion. Additionally, irrespective of any variation of legal entities that were parties to the transactions, the real persons involved as representatives in the contract negotiations were the same. In the view of the defendants, because an agreement requires a meeting of the minds, it is sufficient that the persons with the minds were the same even if there was technically a variation in the legal entities whom the real persons represented in the transactions.

The court finds the technical dissimilarity in the parties to be inconsequential for present purposes and the court need not now discuss the consequences of this distinction. Although the relatedness of the parties is relevant to the context of this case, the prior LLC agreements are not necessarily central elements to the defendants' reformation claim. Rather, this case is analogous to a situation in which two sophisticated parties choose to utilize a form book for the template to memorialize the product of their negotiations. Parties may negotiate at length about numerous

6

contractual provisions and change the pre-selected template to reflect those negotiated agreements while never discussing, much less intending to change, the standard provisions of the template. But if in the process of writing up the final draft, certain standard provisions of the template are inadvertently changed or reordered, surely reformation is not barred simply because these provisions were never discussed in the parties' negotiations. In such a case, the agreement to utilize a standard template may constitute the requisite agreement to satisfy this element of a reformation claim.

Here, the parties did not turn to a form book for a template, but they instead utilized a prior agreement with which all persons negotiating were familiar as the foundation for the parties' present agreement. The defendants allege that they agreed to change certain terms but contend that other provisions, including the order of the waterfalls, were never discussed. The acknowledgment that certain provisions were never discussed does not bar a reformation claim; reformation requires merely an agreement on a term, not necessarily a discussion of that term.

The points made by the plaintiff, (see, e.g., Docket No. 28 at 7), are hurdles the defendants must overcome to sustain their burden of proof of clear and convincing evidence at summary judgment or at trial. However, the standard at this early stage is much different. Given the factually intensive nature of a reformation claim, such claims are rarely resolved on motions to dismiss. This difference in procedural posture is a significant factor that distinguishes W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC, 2009 Del. Ch. LEXIS 181 (Del. Ch. Oct. 6, 2009), a case heavily relied upon by the plaintiff, from the present matter. Reformation became an issue in Willow-Bay only after remand following appeal and the decision relied upon most heavily by the plaintiff is the chancery court's decision following a court trial, not an order on a motion to dismiss or even an order on summary judgment. The chancellor in Willow-Bay ultimately concluded that reformation was not appropriate despite certain evidence of a different agreement and

7

understanding, but this finding was largely a product of the facts found in that case, id., and thus that case is of minimal relevance to the present case.

Another case relied upon by the plaintiff does involve a reformation claim at the motion to dismiss stage, but again this court finds this non-binding authority readily distinguishable. In Envo, Inc. v. Walters, 2009 Del. Ch. LEXIS 216 (Del. Ch. Dec. 30, 2009), the court granted a motion to dismiss the party's claim that a contract should be reformed to change the entity named as a party to the contract and the names on certain promissory notes. Id. Although the plaintiff sought to characterize these mistakes as a mere "scrivener's error," the court concluded that dismissal was appropriate because, in part, the names of the parties was so fundamental to the parties' transaction that the sophisticated business entitles would not be expected overlook such a "scrivener's error." Id. In the present case, the defendant may be able to argue that the precise error that occurred in this case was of a nature that it would not necessarily have been detected had it been accidentally changed.

Accepting the defendants' allegations as true, as this court must at this preliminary stage, the court concludes that the defendants' counterclaim adequately alleges that the parties had agreed to re-propose the standard language from the prior agreements and make changes only where they were explicitly discussed. (See, e.g., Docket No. 20-1 at 2.) Under the circumstances of this case, the court concludes that amidst the detailed factual allegations included in its counterclaim, the defendants have adequately alleged that the parties had a prior agreement to not alter the order of the waterfalls and either through mutual mistake or the knowing silence of the plaintiff, the order of the waterfalls was changed in the final written agreement.

**III. CONCLUSION**

For the reasons set forth above, the court shall deny the plaintiff's motion to dismiss the defendants' counterclaim. The defendants have alleged with requisite particularity the details of the

alleged mistake and the parties' prior agreement. Accepting the defendants' allegations as true, a reasonable finder of fact could conclude that reformation of the LLC agreement is appropriate, and thus the motion to dismiss must be denied.

Finally, this case has been identified for inclusion in the Seventh Circuit's E-Discovery Pilot Program. Accordingly, the court shall issue an amended scheduling order incorporating the Seventh Circuit Electronic Discovery Committee's Principles Relating to the Discovery of Electronically Stored Information.

**IT IS THEREFORE ORDERED** that the plaintiff's motion to dismiss the defendants' counterclaim, (Docket No. 23), is **denied**.

Dated at Milwaukee, Wisconsin this 15th day of April, 2011.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge
